**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1235-24

CHANDER KANT, Ph.D.,

     Plaintiff-Appellant,

v.

SETON HALL UNIVERSITY,
JOYCE STRAWSER, RICHARD
HUNTER, and JOHN SHANNON,

     Defendants-Respondents.

_____

     Argued April 29, 2026 – Decided June 5, 2026

     Before Judges Mayer, Vanek, and Jacobs.

     On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0007-21.

     Arnold Cohen argued the cause for appellant (Oxfeld Cohen PC, attorneys; Arnold Cohen, of counsel and on the briefs; Ethan Felder, on the briefs).

     Bruce M. Gorman, Jr. argued the cause for respondents (Archer & Greiner PC, attorneys; Patrick Papalia, Bruce M. Gorman, Jr., and Amy E. Pearl, on the brief).

PER CURIAM

Plaintiff Chander Kant, Ph.D. appeals from several pretrial orders in his employment discrimination and retaliation action against defendants Seton Hall University (Seton Hall), Joyce Strawser, Richard Hunter, and John Shannon.  He also appeals from an October 25, 2024 order granting summary judgment to defendants.  We affirm all orders on appeal.

By way of background, plaintiff is of Asian descent and Indian origin.  He received an undergraduate degree in economics from St. Stephen's College in Delhi and a master's degree from the Delhi School of Economics.  Plaintiff received his Doctorate in Philosophy (Ph.D.) from Southern Methodist University.  He then worked as an assistant professor at Cleveland State University and Catholic University of America.

On September 1, 1989, plaintiff began working as an associate professor in the Department of Economics and Legal Studies (Department) at Seton Hall's W. Paul Stillman School of Business (School of Business).  The position of associate professor is the designation between assistant professor and full professor.

In 1996, 1997, 1998, 2011, 2013, and 2016, plaintiff unsuccessfully applied to be promoted to full professor at Seton Hall.  According to Seton Hall, the university designated plaintiff's teaching as "incompeten[t]" multiple times.

2

Between the fall semester of 2004 through 2018, plaintiff failed to meet the requisite expectations for continued excellence in teaching for all but three semesters.

Seton Hall's Promotional Requirements

According to Seton Hall's 2018 faculty guide, promotion to full professor requires fulfillment of three criteria identified in the Department's guidelines: (1) "Teaching [e]ffectiveness"; (2) "[s]cholarship, including [r]esearch and other [c]reative [w]ork"; and (3) "[s]ervice to the [u]niversity, the [p]rofession, and the [c]ommunity." To satisfy these criteria, the Department's guidelines specified an applicant must demonstrate: (1) an average teaching evaluation score of at least 3.75 out of 5 since the last promotion; (2) the ranking of the quality of the journals in which he or she had published ("A+", "A", "B", or "C") and a " display of continued scholarship"; and (3) "strong evidence of continued service since the promotion/appointment to associate professor." An individual applying for promotion must demonstrate satisfaction of these criteria.

Under the faculty guide, "scholarship" meant "professional recognition of meritorious publications, research, or other creative work." The Department's guidelines specified two main avenues to satisfy the "scholarship" requirement for promotion to full professor:

A-1235-24

1. Four economics publications: where two are of 'A' quality or better, the other two must be of 'B' rank or better. At least one of these publications must be sole authored. Plus a display of continued scholarship and evidence of citations to published work.

2. Three economics publications: where one is an 'A+', the other two are of 'B' rank or better. At least one of these publications must be sole authored. Plus a display of continued scholarship and evidence of citations to published work.

Plaintiff's 2018 Application for Promotion

In October 2018, plaintiff again applied for promotion to full professor. Plaintiff's application included fewer than two semesters of teaching evaluations, specifically: (1) complete evaluations for fall 2015 semester; and (2) evaluations for part of the spring 2018 semester and for only some of the courses he taught. Plaintiff also listed the nine refereed journal articles he solely authored and published between 1989 and 2018, with the most recent articles dated 2005, 2010, and 2016. Notably, plaintiff failed to rank the journals in which he had published and gave himself triple credit for his articles by listing each one three times.

Additionally, plaintiff asserted that performing his ordinary job duties satisfied the leadership and service criteria for promotion. Specifically, plaintiff indicated he had worked four months without pay. However, this payroll issue

4

was later rectified and plaintiff received retroactive pay. Plaintiff admitted at his deposition that his teaching during this period was not beyond his ordinary job duties and did not demonstrate leadership.

Denial of Plaintiff's 2018 Application

Hunter and Shannon, full professors in the Department, voted to deny plaintiff's 2018 application for promotion at the Department review level. They based their votes on plaintiff's failure to: (1) provide sufficient teaching evaluations; (2) identify the rank or quality of the journals in which he had published; and (3) demonstrate leadership beyond his normal duties. Strawser, dean of the School of Business, also declined to recommend plaintiff for promotion because: (1) his teaching evaluation scores did not consistently rise to the 3.75 level; (2) he published only nine refereed articles since joining Seton Hall and "only four peer-reviewed journal articles over the last thirteen years"; and (3) he did not demonstrate the leadership expected for promotion to full professor, such as serving as a faculty committee chair or leading significant projects or initiatives.

Ultimately, the rank and tenure committee for the School of Business unanimously rejected plaintiff's 2018 application for promotion because plaintiff failed to provide sufficient evidence that he satisfied the criteria in the

5

faculty guide and Department guidelines. At his deposition, plaintiff admitted none of these committee members voted against him based on discriminatory animus.

Seton Hall's rank and tenure committee also unanimously rejected plaintiff's application because he failed to meet the criteria for promotion. Plaintiff conceded ten of the eleven members of this committee did not vote against him based on discriminatory animus. Seton Hall's interim provost formally rejected plaintiff's promotion application on January 16, 2017.

Plaintiff's Complaint

In January 2021, plaintiff filed a three-count complaint against defendants alleging they violated the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50, by failing to promote him, discriminating against him, and retaliating against him. He claimed a less-qualified associate professor, who is Caucasian, received a promotion to full professor while his application was denied.

In his complaint, plaintiff also alleged that, in "the [f]all of 2014, Prof[essor] Hunter, whose race is Caucasian and national origin American, told [plaintiff] he was 'one of those typical Indians who is not submissive to us.'" However, at his deposition, plaintiff confirmed Hunter's alleged comment was

6

isolated and he never heard Hunter make any derogatory comments about people from India. Plaintiff further admitted he took no action in response to Hunter's alleged comment "[b]ecause there were more important issues to consider." Plaintiff lacked any other evidence to support how Hunter's purported comment related to the allegations in his complaint.

Defendants filed an answer denying plaintiff's allegations and asserting various affirmative defenses.

In a September 10, 2021 order, Judge Thomas R. Vena granted defendants' motion for a protective order (Discovery Confidentiality Order). Defendants then produced designated confidential documents to plaintiff.

In an April 14, 2022 order, Judge Vena denied plaintiff's motion to strike defendants' answer due to alleged discovery deficiencies. Judge Vena found defendants' discovery responses were sufficient.

On June 3, 2022, plaintiff's attorney filed a motion to be relieved as counsel. Plaintiff opposed his counsel's motion and attached exhibits to his certification that included confidential documents produced by defendants under the Discovery Confidentiality Order. Although defendants gave plaintiff multiple opportunities to withdraw the confidential documents from the public docket, he refused to do so. The judge granted counsel's motion to be relieved

A-1235-24

as plaintiff's attorney. Plaintiff informed the trial court he would proceed as a self-represented litigant.

In a June 24, 2022 order, Judge Vena extended the discovery end date to October 4, 2022. He also granted defendants' motion to compel plaintiff's deposition. Plaintiff appeared for his deposition on July 26, and 28, 2022. However, he refused to complete his deposition.

Plaintiff filed another motion to compel discovery. Defendants filed motions: (1) seeking a protective order and sanctions against plaintiff for disclosing confidential documents in violation of the Discovery Confidentiality Order and (2) compelling the completion of plaintiff's deposition. In opposing defendants' motion for a protective order, plaintiff filed additional confidential documents in contravention of the Discovery Confidentiality Order.

In orders dated August 26, 2022, Judge Vena: (1) granted plaintiff's motion to extend discovery to January 2, 2023; (2) denied plaintiff's motion to compel discovery; (3) granted defendants' motion for a protective order and awarded counsel fees and costs based on plaintiff's violation of the Discovery Confidentiality Order; and (4) granted defendants' motion to complete plaintiff's deposition before September 22, 2022. The judge denied plaintiff's subsequent motions for reconsideration of the April 14 and August 26, 2022 orders. In a

A-1235-24

February 23, 2023 order, Judge Vena directed plaintiff's payment of sanctions in the amount of $8,919.00 in accordance with the August 26, 2022 order.

Two weeks before the court-ordered date for completion of plaintiff's deposition, plaintiff moved to delay his deposition. Judge Vena denied the motion.

In a December 22, 2022 order, Judge Stephen L. Petrillo extended discovery to June 30, 2023. He also granted defendants' motion to complete plaintiff's deposition scheduled for January 11 and 13, 2023.

Following oral argument, Judge Petrillo denied plaintiff's renewed discovery motion except to require defendants provide certain faculty guides. The judge denied the remainder of plaintiff's discovery requests because the requested discovery had been previously deemed irrelevant or pertained to claims beyond the allegations in plaintiff's complaint.

In an August 22, 2023 order, Judge Petrillo granted plaintiff's motion to extend discovery to December 29, 2023. Plaintiff subsequently deposed three of the four defendants and one non-party witness.

In a January 12, 2024 order, Judge Petrillo granted another motion by plaintiff to extend discovery. The judge extended discovery to February 29, 2024, to allow plaintiff to complete defendants' depositions. However, the judge

9

stated no other discovery would be permitted during the extended discovery period absent a court order. In his motion, plaintiff filed confidential excerpts from deposition transcripts. Defendants cross-moved for a protective order and sanctions, which the judge denied. However, the judge warned plaintiff against further violation of the Discovery Confidentiality Order.

In a separate January 12, 2024 order, Judge Petrillo granted defendants' motion for a protective order barring the depositions of Interim Seton Hall President and an unnamed Seton Hall corporate representative. The judge concluded the depositions were only sought in relation to claims not within the scope of plaintiff's complaint. The judge further found the prior judge determined the same claims were beyond the allegations in the complaint. The judge noted plaintiff never attempted to amend his complaint based on the prior judge's ruling.

In an April 24, 2024 order, Judge Petrillo denied plaintiff's reconsideration motion on his order limiting discovery and sanctioned plaintiff $1,000 for violating the Discovery Confidentiality Order. The judge found plaintiff had not presented any new information or cited anything the judge overlooked. The judge allowed plaintiff to pursue limited written discovery, including, if appropriate, a motion to compel discovery.

A-1235-24

Nearly two months after the close of discovery, plaintiff filed a motion for leave to amend his complaint to include allegations related to events occurring between 2017 and 2023. Plaintiff also moved to recuse Judge Petrillo and for reconsideration of the April 2024 sanction order.

Plaintiff failed to appear for oral argument on these motions. As a result, in a July 31, 2024 order, Judge Petrillo found plaintiff abandoned the relief sought by failing to appear on the scheduled argument date. Nevertheless, the judge ruled on the merits of plaintiff's motions. The judge denied the motion to amend the complaint because plaintiff never moved to do so during the extensive discovery period despite prior rulings by Judge Vena that certain information plaintiff sought to introduce went beyond the allegations in plaintiff's complaint. Regarding plaintiff's recusal motion, the judge deemed the issue moot because the case had been transferred to Judge Robert H. Gardner. The judge also denied reconsideration of the January 2024 sanction order.

Plaintiff moved for reconsideration of the July 31, 2024 orders and defendants cross-moved for sanctions. Plaintiff again failed to appear for argument. Judge Petrillo denied plaintiff's motion and granted defendants' cross-motion for sanctions. In granting defendants' cross-motion, the judge found plaintiff's bad faith in producing confidential documents in violation of

11

the Discovery Confidentiality Order warranted an award of counsel fees and costs. In an October 30, 2024 order, the judge awarded $7,661.50 to defendants.

In the fall of 2024, defendants moved for summary judgment. After considering the parties' written submissions and oral argument, in an October 25, 2024 order, Judge Gardner granted defendants' motion. The judge found plaintiff failed to show: (1) evidence he was qualified for promotion and (2) evidence of discrimination that would support his retaliation and harassment claims. Judge Gardner articulated his findings of fact and conclusions of law in a decision placed on the record.

In a December 6, 2024 order, Judge Gardner denied plaintiff's motion to vacate the summary judgment order.

On appeal, plaintiff argues Judge Petrillo erred in denying his motion for leave to amend his complaint and to conduct supplemental discovery. He also challenges the judges' discovery orders. Additionally, he contends summary judgment was improvidently granted to defendants and both judges erred by imposing sanctions. We reject these arguments.

We first consider plaintiff's argument there were genuine issues of material fact precluding summary judgment. We disagree.

We review a trial court's order granting summary judgment de novo and apply the same standard used by the trial court. Boyle v. Huff, 257 N.J. 468, 477 (2024). "In ruling on a summary judgment motion, a court does not 'weigh the evidence and determine the truth of the matter'; it only 'determine[s] whether there is a genuine issue for trial.'" C.V. ex rel. C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305-06 (2023) (alteration in original) (quoting Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021)).

Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Friedman v. Martinez, 242 N.J. 449, 471-72 (2020) (quoting R. 4:46-2(c)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Id. at 472 (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). A court should grant summary judgment "[o]nly 'when the evidence is so one-sided that one party must prevail as a matter of law.'" Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 257 (2018) (internal quotation marks omitted) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Under Rule 4:46-2, summary judgment shall only be granted in the absence of a genuine

issue as to any material fact challenged and where the moving party is entitled to a judgment as a matter of law.

New Jersey courts follow the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to evaluate NJLAD claims which requires a plaintiff to first establish a prima facie discrimination claim. Viscik v. Fowler Equip. Co., 173 N.J. 1, 13-14 (2002). To establish a prima facie case, a plaintiff asserting a discrimination claim based on a failure to promote must establish that: (1) he or she is a member of a class protected by NJLAD; (2) he or she was "qualified for the position . . . sought"; (3) he or she was "denied promotion"; and (4) "others with similar or lesser qualifications" were selected for the position. Chou v. Rutgers, State Univ., 283 N.J. Super. 524, 538 (App. Div. 1995) (citing Dixon v. Rutgers, State Univ., 110 N.J. 432, 443 (1988)).

"The evidentiary burden at the prima facie stage is 'rather modest'" and "is to be evaluated solely on the basis of the evidence presented by the plaintiff, irrespective or defendants' efforts to dispute that evidence." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446 (2005) (first quoting Marzano v. Computer Science Corp., 91 F.3d 497, 507 (3d Cir. 1996); and then citing Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir. 2000)). "The establishment of a

prima facie case gives rise to a presumption of discrimination." Viscik, 173 N.J. at 14 (citing Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 493 (1982)).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant-employer to "articulate a legitimate, non-retaliatory reason for the decision." Ibid. (citing Andersen, 89 N.J. at 493). If the employer articulates a legitimate reason for its action, "the burden shifts back to the plaintiff to show that the employer's proffered reason was merely a pretext for discrimination." Ibid.

To prove pretext, a plaintiff must show the proffered reason was false, and "the employer was motivated by discriminatory intent." Ibid. (citing Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 561 (1990)). It is not sufficient to simply identify an act or incident the plaintiff believes bespeaks discrimination. El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 173 (App. Div. 2005). Rather, "'a plaintiff must . . . demonstrate that the employer was motivated by discriminatory intent." Ibid. (quoting Viscik, 173 N.J. at 14). A plaintiff is not entitled to a jury trial unless they can point to some evidence from which a factfinder could reasonably either: "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action." Zive, 182 N.J. at 455-56 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

In the context of discrimination claims involving a college or university, "[w]hen a decision to hire, promote or grant tenure to one person rather than another is reasonably attributable to an honest even though partially subjective evaluation of their qualifications, no inference of discrimination can be drawn." Chou, 283 N.J. Super. at 540 (alteration in original) (quoting Lieberman v. Gant, 630 F.2d 60, 67 (2d Cir. 1980)). Courts should be "vigilant not to intrude into that determination and should not substitute their judgment for that of the college with respect to the qualifications of faculty members." Id. at 539.

Here, in granting summary judgment to defendants, Judge Gardner found: (1) plaintiff failed to show he was qualified for promotion in accordance with the applicable criteria and (2) plaintiff proffered no evidence of racial animus by the committee members who denied his promotion.

In his merits brief, plaintiff, for the first time, contends he made a prima facie case of discriminatory failure to promote under the NJLAD. In support of his argument, plaintiff relies solely on his self-serving assertion that he demonstrated his qualifications for promotion. Based on the single alleged racist comment made by Hunter and plaintiff's purported superior qualifications

to become a full professor as compared to a white faculty member, plaintiff argues he "established sufficient evidence to prove that the reasons [d]efendants proffered for the decision not to promote [him] were bogus and accordingly support an inference that [d]efendants did not act for non-discriminatory reasons."

Plaintiff's brief on appeal does not challenge dismissal of his claims for harassment and retaliation or his claims against the individual defendants. Only in his reply brief does plaintiff assert his claims against the individual defendants should be reinstated and argues his promotion application properly satisfied the "[t]eaching [e]ffectiveness" and "[s]cholarship" criteria. We "generally decline to consider arguments raised for the first time in a reply brief." Bacon v. N.J. State Dep't of Educ., 443 N.J. Super. 24, 38 (App. Div. 2015) (citing L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014)).

Even if we considered plaintiff's arguments first presented in his reply brief, plaintiff failed to establish a prima facie case of discriminatory failure to promote because he did not demonstrate he was qualified for the full professor position. The standards for promotion are clearly set forth in the faculty guide and the Department guidelines. As to the first standard, plaintiff failed to

17

demonstrate continued and consistent excellence in teaching. Instead, plaintiff cherry-picked the few positive evaluations he received in his many years of teaching. According to Seton Hall's records, plaintiff consistently scored below the effective teaching criteria over the most recent ten years of his teaching career.

Regarding the second standard, plaintiff did not follow the Department guidelines by not properly ranking the quality of the journals in which he had published. Additionally, plaintiff improperly listed each of his publications three times, thereby creating a false impression regarding the magnitude of his written scholarship. Plaintiff produced a limited number of published articles despite his long tenure at Seton Hall. As of his October 2018 promotion application, plaintiff only published nine refereed journal articles in his twenty-nine years at Seton Hall, with his most recent publications in 2005, 2010, and 2016. As Judge Gardner correctly concluded, plaintiff's publications were not commensurate with the continued scholarship expected of a full professor at Seton Hall.

Regarding the service and leadership standard, plaintiff cited he worked for four months without pay. However, he offered no other service or leadership activities. Because teaching was included as part of plaintiff's regular duties,

his failure to timely receive his salary in full did not constitute qualifying service to the university or demonstrate leadership. On these facts, we are satisfied Judge Gardener properly found plaintiff's claim for discriminatory failure to promote under the NJLAD failed as a matter of law.

We also reject plaintiff's argument defendants acted with discriminatory intent based solely on Hunter's single comment. Plaintiff admitted Hunter's alleged racist comment was an isolated remark and he never heard Hunter utter any other derogatory comments about people from India. Plaintiff also admitted that no members of the rank and tenure committee for the School of Business voted against him out of discriminatory animus. He further acknowledged that ten of the eleven members of the Seton Hall's rank and tenure committee did not vote against him because of discriminatory animus. Under the circumstances, plaintiff failed to show the discriminatory animus required to support his discrimination claim.

We next consider plaintiff's argument that Judge Petrillo erred in denying his motion for leave to file an amended complaint. We disagree.

Our review of a trial court's denial of a motion for leave to amend is limited. Franklin Med. Assocs. v. Newark Publ. Sch., 362 N.J. Super. 494, 506

(App. Div. 2003). We will not disturb a trial court's decision regarding leave to amend a pleading absent a clear abuse of discretion. Ibid.

Motions for leave to amend a complaint are to be liberally granted in the trial court's discretion. R. 4:9-1; Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456-57 (1998). Nevertheless, amendment of a complaint should be denied if the amendment is "futile" and "not sustainable as a matter of law." Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006) (quoting Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256 (App. Div. 1997)). A court may refuse to permit a party to add new claims late in the litigation when no justifiable reason for the delay is asserted and doing so would prejudicially affect the other party's rights. Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 484-85 (App. Div. 2012). However, "[i]f a claim does not arise until after a complaint has been filed, leave to amend to add that claim should be granted so long as the moving party has exercised due diligence, and the addition will not cause the trial to be unduly delayed or complicated." State v. Standard Tank Cleaning Corp., 284 N.J. Super. 381, 396 (App. Div. 1995).

Here, more than three years after filing his complaint and two months after the close of the lengthy discovery period, plaintiff filed a motion for leave to

"serve a supplemental complaint" related to events between January 2017 and January 2023. Plaintiff's proposed amended complaint alleged: (1) he was required to teach more courses than his white faculty colleagues from the 2017 spring semester through the 2018 fall semester; (2) his laptop speakers were disabled in May 2020; (3) he was forced to endure display problems on his computer in the Spring of 2022; (4) there were password issues with his laptop in January 2023; (5) there were issues with student grade appeals in October 2020 and March 2022; (6) his request for a sabbatical was denied in part in October 2020; (7) he received an untimely 2022 Department meeting link; and (8) he had been deliberately humiliated by a May 2022 email announcing faculty election results.

Plaintiff raised these allegations during the extended discovery period. However, for reasons not evident in the record, plaintiff never moved for leave to amend his complaint until two months after discovery closed.

Plaintiff also failed to appear for oral argument on his motion to "supplement." In denying plaintiff's motion, the judge found: (1) it was untimely; (2) the events supporting the "new" allegations occurred years earlier, many prior to the filing of the complaint, and the remainder of the allegations occurred prior to the close of discovery as extended multiple times; (3) the

21

information was not newly discovered and the motion was really a motion to amend the complaint; (4) plaintiff's prior efforts to include these allegations as part of his case were unsuccessful; (5) the motion was designed to delay the litigation; (6) plaintiff acted in bad faith and had no excuse for the delay in seeking leave to amend; (7) permitting the amended complaint would prejudice defendants and delay the trial; and (8) any new claim based on these allegations would be futile because the allegations did not reflect an adverse employment action required to support a retaliation claim under the NJLAD.

Plaintiff then moved for reconsideration. In a decision placed on the record, Judge Petrillo found: (1) plaintiff raised nothing new in his motion for reconsideration; (2) the allegations plaintiff sought to include in the proposed amended complaint not only predated the complaint but were raised during discovery years earlier; (3) plaintiff failed to explain why he waited an inordinate time to move to add these allegations; (4) plaintiff was advised in August 2022 that no discovery would be allowed on allegations not included in his complaint; (5) it would be unfair to defendants to allow plaintiff to amend his complaint at this late stage in the litigation; and (6) none of plaintiff's new allegations rose to the level of an adverse employment action and, therefore, could not support an independent retaliation claim under the NJLAD. Further,

22

the judge concluded the proposed newly added allegations were specious and futile.

On appeal, plaintiff, for the first time, argues he simply sought to supplement his complaint to include all "issues, events, and occurrences" that comprised his "one composite whole claim of discrimination, retaliation, and harassment by [d]efendants." Plaintiff claims his motion should have been decided in accordance with Rule 4:9-4 and, therefore, the judge's decision was "bad both on facts and law." We disagree.

Under Rule 4:9-4, "[o]n motion by a party the court may, upon reasonable notice and on terms, permit that party to serve a supplemental pleading setting forth transactions or occurrences which took place after the date of the pleading sought to be supplemented." While leave to file a supplemental complaint should be freely given, the moving party is required to demonstrate that they exercised due diligence and that granting the motion will not cause the trial to be unduly delayed. Standard Tank, 284 N.J. Super. at 396.

Plaintiff overlooks that Rule 4:9-4 does not permit supplementing a complaint with events predating the complaint. Here, the events to be included in plaintiff's proposed "supplemental" complaint predated the filing of his complaint. Therefore, plaintiff cannot rely on this rule to include the pre-

complaint allegations regarding his teaching course load, sabbatical, laptop, and student grade appeals.

Additionally, plaintiff overlooks his extended delay in seeking to amend his complaint. The events he sought to include in an amended pleading took place from 2022 through January 2023. Plaintiff fails to explain why he waited until April 2024, more than a year after the last event date and after the close of discovery, to move to amend the complaint.

Having reviewed the record, we are satisfied the judge's discretionary ruling denying plaintiff leave to supplement or amend his complaint was not an abuse of discretion.

We turn to plaintiff's argument that Judges Vena and Petrillo erred in imposing sanctions against him. In three separate orders, the judges compelled plaintiff to pay $8,919.00, $7,661.50, and $1,000 in sanctions. Plaintiff argues for reversal of the awarded sanctions because he was not afforded the safe harbor period under N.J.S.A. 2A:15-59.1 and Rule 1:4-8. We reject this argument.

We review a trial court's sanction for discovery misconduct to determine "whether the trial court abused its discretion." Abtrax Pharms, Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 517 (1995). A trial court's discovery sanction will be upheld "unless an injustice appears to have been done." Ibid. "Sanctions

imposed by a trial court will not be disturbed on appeal if they are just and reasonable under the circumstances." Aetna Life & Cas. Co. v. Imet Mason Contractors, 309 N.J. Super. 358, 365 (App. Div. 1998) (citing Hirsch v. General Motors Corp., 266 N.J. Super. 222, 261 (Law Div. 1993)).

Plaintiff argues he was deprived of an opportunity to withdraw the pre-trial motions in accordance with N.J.S.A. 2A:15-59.1 and Rule 1:4-8. However, neither N.J.S.A. 2A:15-59.1 nor Rule 1:4-8 apply to a party's pre-trial discovery conduct. See McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 560-62 (1993) (interpreting the scope of N.J.S.A. 2A:15-59.1).

In this case, the judges' sanction orders were not based on frivolously filed motions. Rather, the judges sanctioned plaintiff because he violated the Discovery Confidentiality Order and failed to appear for oral argument before Judge Petrillo.

Nor did Judge Petrillo abuse his discretion in awarding sanctions following plaintiff's failure to appear at oral argument on his motion for reconsideration of the July 31, 2024 order. Plaintiff failed to appear for oral argument before Judge Petrillo on another occasion but Judge Petrillo did not sanction plaintiff for contempt of court at that time. When plaintiff failed to appear before Judge Petrillo a second time, the judge found plaintiff acted in

bad faith and with utter disdain for the court. Under the circumstances, Judge Petrillo properly sanctioned plaintiff for his repeated willful failure to appear before the court.

We also reject plaintiff's argument the judges erred in their disposition of his discovery motions. Notably, plaintiff fails to adequately explain why the discovery orders should be reversed.

The abuse of discretion standard applies to a trial court's decision regarding discovery. Focazio v. Aboyoun, 481 N.J. Super. 153, 170 (App. Div. 2025). "[A]bsent . . . a judge's misunderstanding or misapplication of the law," an appellate court should affirm a discovery decision. Brugaletta v. Garcia, 234 N.J. 225, 240 (2018).

Here, without any supporting argument except to assert he was denied unspecified discovery, plaintiff argues Judge Vena erred by granting the September 10, 2021 protective order and entering the Discovery Confidentiality Order. We are satisfied Judge Vena did not abuse his discretion. First, Seton Hall had a legitimate interest in preserving the confidentiality of its internal documents and emails. Second, the Discovery Confidentiality Order did not bar plaintiff's access to discovery. Rather, the order simply maintained the confidentiality of sensitive documents produced during the litigation.

26

Plaintiff next claims, also without any supporting argument, Judge Vena erred in entering the April 14, 2022 order denying his motion to strike defendants' answer due to alleged deficiencies in defendants' discovery responses.[1] Because plaintiff failed to present any specific challenge to Judge Vena's findings, we discern no abuse of discretion in the judge's April 14, 2022, order.

Plaintiff next claims Judge Vena erred in his June 24, 2022 order compelling plaintiff to be deposed notwithstanding plaintiff's status as a self-represented litigant. Regardless of his self-represented status, plaintiff was obligated under the court rules to appear for his deposition. See R. 4:14-1. There was nothing improper in the judge requiring plaintiff to attend the duly noticed deposition.

Plaintiff also challenges the August 26, 2022 protective order. Plaintiff argues that order denied his access to potentially admissible evidence. However, Judge Vena granted the order in response to plaintiff filing confidential documents in violation of the Discovery Confidentiality Order. Contrary to

---

[1] Plaintiff failed to provide a copy of the papers submitted in connection with this motion.

A-1235-24

plaintiff's assertion, the judge did not deny discovery sought by plaintiff. Thus, we reject plaintiff's challenge to the August 26 order.

Plaintiff also contends Judge Vena erred in denying his motion to block his attendance at his court-ordered deposition. Plaintiff has the right to represent himself. However, he is bound by the same court rules and court orders as if he was represented by counsel. "[Self-represented] litigants are not entitled to greater rights than litigants who are represented by counsel." Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 99 (App. Div. 2014). "[S]tatus as a [self-represented] litigant in no way relieves [the litigant] of [the] obligation to comply with . . . court rules." Venner v. Allstate, 306 N.J. Super. 106, 110 (App. Div. 1997). Notwithstanding plaintiff's self-represented status, we are satisfied Judge Vena did not abuse his discretion in denying plaintiff's motion.

Next, plaintiff contends the December 22, 2022 order denying his motion for a stay pending appeal was contrary to the interests of justice. However, the trial court denied plaintiff's motion after this court denied his motion for leave to appeal. Under the circumstances, we discern no abuse of discretion in the judge's denial of plaintiff's motion.

We also reject plaintiff's argument that the December 22, 2022 order erroneously dismissed his complaint, in part, for failure to make discovery.

Plaintiff misstates the judge's ruling in his December 22 order. Judge Vena did not dismiss plaintiff's complaint. Rather, the judge extended discovery for an additional six months and ordered plaintiff to appear for two additional days of depositions. We discern no abuse of discretion in the judge's entry of this order.

Plaintiff also contends Judge Vena improperly denied his December 2022 motion to compel discovery. However, the February 27, 2023 order granted plaintiff's motion in part by ordering defendants to produce certain faculty guides. The judge denied plaintiff's remaining discovery requests because the discovery was previously deemed irrelevant and pertained to allegations not within plaintiff's complaint. Plaintiff's conclusory assertion that the judge erred in entering the February 27, 2023 order is insufficient to establish the judge abused his broad discretion in discovery matters.

Next, plaintiff challenges the January 12, 2024 order barring the depositions of Interim University President and an unnamed Seton Hall corporate representative. However, as Judge Petrillo correctly determined, these depositions were sought in relation to claims previously deemed to be beyond the reach of the allegations in plaintiff's complaint. Because plaintiff was not entitled to discovery pertaining to matters not within his complaint, Judge Petrillo did not abuse his discretion in entering this order.

A-1235-24

Plaintiff next contests the April 24, 2024 order denying his motion to reconsider the January 12, 2024 order. On reconsideration, Judge Petrillo found plaintiff failed to raise anything new in support of his request for additional discovery. Absent any newly raised argument, there is no reason to disturb Judge Petrillo's order denying reconsideration.

To the extent we have not addressed any of plaintiff's remaining arguments, those arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division